UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, et al., </br></br> Plaintiffs, </br></br> v. </br></br> UNION INSURANCE COMPANY, </br></br> Defendant. | No. 4:22 CV 991 RWS |

## **MEMORANDUM AND ORDER**

This case arises out of a personal injury lawsuit filed against Plaintiff Turbine Master, Inc. ("Turbine") following a motor vehicle accident. Defendant Union Insurance Company ("Union") was the primary liability insurer of Turbine at the time and defended Turbine in the lawsuit. Plaintiff Starr Indemnity & Liability Company ("Starr") was the excess liability insurer of Turbine and provided insurance coverage beyond the $1 million limit of Union's primary liability policy. The case is before me on Union's motion to dismiss the claims asserted by Turbine. For the reasons discussed below, Union's motion will be granted.

## **BACKGROUND**

In the fall of 2013, Shawn Buchanan was involved in a motor vehicle accident in St. Louis County, Missouri, when his vehicle collided with a commercial vehicle owned by Turbine and operated by one of Turbine's employees. Buchanan sustained

injuries due the accident and filed a lawsuit against Turbine and its employee for negligence. Turbine was insured at the time of the accident through two policies: a primary liability policy issued by Union, and an excess liability policy issued by Starr. The primary liability policy provided $1 million of auto liability coverage, and the excess liability policy provided an additional $5 million of coverage.

Union was notified of the accident and Buchanan's lawsuit because the primary liability policy reserved Union's right to contest or settle any claim against Turbine. The primary liability policy also prohibited Turbine from voluntarily assuming any liability or settling any claims without Union's consent. Upon being notified, Union retained counsel to represent Turbine and its employee. The lawsuit included motion practice, fact and expert discovery, and mediation and other alternative dispute resolution efforts. The case was tried to a jury in November 2021. The jury returned a verdict in favor of Buchanan for $2.8 million. The $2.8 million verdict was appealed, and while the appeal was pending, Starr accepted a $2.6 million settlement offer. As a result, Starr was required to pay $1,485.034.26 in excess liability coverage, plus appellate bonds and other costs and damages.

Starr and Turbine later filed this lawsuit against Union, asserting three claims: (Count I) a claim for bad faith failure to settle brought by Starr based on assignment; (Count II) a claim for bad faith failure to settle brought by Starr and Turbine based on equitable subrogation; and (Count III) a claim for bad faith failure to settle

brought by Starr and Turbine based on contractual subrogation.  In their complaint, Starr and Turbine allege: "In exchange for agreeing to pay $1,485,034.26 to reach a settlement, Starr received an assignment from Turbine [] of its rights under the [primary liability policy] and to bring and prosecute this action, as well as the agreement by Turbine [] to be named as a plaintiff in a suit against [Union], as the holder of the legal title to a subrogation claim against [Union], for the benefit of Starr as the holder of an equitable title to said subrogation claim."

Union moves to dismiss the claims asserted by Turbine in Counts II and III pursuant to Rules 12(b)(1) and 17(a) of the Federal Rules of Civil Procedure.  Union argues that the claims asserted by Turbine should be dismissed on the basis that Turbine lacks standing to bring the claims because it is not the real party in interest. Union argues that Turbine is not the real party in interest because it no longer has legal or equitable title to bring the claims due to its assignment of its rights to Starr.

## DISCUSSION

Rule 17(a) of the Federal Rules of Civil Procedure states that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "A real party in interest is the person who, under governing substantive law, is entitled to enforce the right asserted." Cascades Dev. of Minn., LLC v. National Specialty Ins., 675 F.3d 1095, 1098 (8th Cir. 2012) (internal quotation marks omitted).  In a diversity action, such as this one, "state law determines the issue of

3

who is a real party in interest." Kuelbs v. Hill, 515 F.3d 1037, 1041 (8th Cir. 2010). The parties agree that Missouri law governs the issue of who is a real party in interest with respect to the claims asserted in Counts II and III.[1]

In Counts II and III, Starr and Turbine assert claims for bad faith failure to settle. It is well established under Missouri law that "an insurer owes to its insured a duty to act in good faith in settling a claim against the insured and that the insurer may be liable to the insured when it breaches this duty." Scottsdale Ins. Co. v. Addison Ins. Co., 448 S.W.3d 818, 829 (Mo. banc 2014). "When an insured has a policy providing excess coverage, however, the excess insurer may be obligated to pay the excess judgment or settlement amount caused by the primary insurer's bad faith refusal to settle." Id. The Missouri Supreme Court has held that, in such circumstances, the excess insurer may maintain an action against the primary insurer for bad faith failure to settle based on theories of assignment, equitable subrogation, and/or conventional (contractual) subrogation. Id. at 829–33.

---

[1] The real-party-in-interest rule is related to the requirement that a plaintiff have Article III standing because they both "address a party's right to pursue an action as [a] claimant." Mecklenburg Farm v. Anheuser-Busch, Inc., 250 F.R.D. 414, 417 (E.D. Mo. 2008). They are, however, distinct concepts. See Rawoof v. Texor Petroleum Co., Inc., 521 F.3d 750, 756–57 (7th Cir. 2008) (the requirement that a plaintiff have Article III standing is a constitutional limitation on a federal court's power to hear a case; the real-party-in-interest rule is a codification of a prudential limitation). As discussed below, I find that Turbine is not the real party in interest with respect to the claims asserted in Counts II and III and, therefore, do not need to address the separate but related issue of whether Turbine has Article III standing.

The question presented here is whether an insured, such as Turbine, may maintain an action against its primary insurer for bad faith failure to settle when it has assigned its rights under its primary liability policy to its excess insurer. Union argues that Turbine cannot maintain such an action because it is no longer the real party in interest due to the assignment. Starr and Turbine concede that Turbine assigned its rights of recovery against Union to Starr, but they argue that Turbine may nevertheless maintain such an action because the Missouri Supreme Court's decision in Scottsdale suggests that claims for bad faith failure to settle may be brought jointly in the names of an excess insurer and insured.

The general rule under Missouri law is that "an absolute assignment of an entire right or interest works as a divestiture of all right or interest of the assignor; and, for the purpose of maintaining a civil action, the assignee becomes the real party in interest." McMullin v. Borgers, 806 S.W.2d 724, 731 (Mo. Ct. App. 1991); see also Keisker v. Farmer, 90 S.W.3d 71, 74 (Mo. banc 2002) ("By an assignment, the insurer receives legal title to the claim, and the exclusive right to pursue the tortfeasor."); Four Star Equip., Inc. v. Employers Mut. Cas. Co., 648 S.W.3d 903, 908 (Mo. Ct. App. 2022) (quoting Hagar v. Wright Tire & Appliance, Inc., 33 S.W.3d 605, 610 (Mo. Ct. App. 2000)) ("Missouri case law is very clear, 'if a claim has been assigned, there is a complete divestment of all rights from the assignor and the vesting of those rights in the assignee.'").

5

Because Starr and Turbine allege and concede that Turbine assigned its rights under its primary liability policy to Starr, I must conclude that Turbine is not the real party in interest with respect to the claims asserted in Counts II and III.  See Axis Specialty Ins. Co. v. New Hampshire Ins. Co., No. 15-0809-CV-W-ODS, 2016 WL 4257369, at *2 (W.D. Mo. Aug. 11, 2016) (finding the insured was not the real party in interest and did not have standing to bring bad-faith-failure-to-settle claims where it was undisputed that the insured assigned all claims arising out of and related to its primary liability policy to its excess insurer).[2]  The claims asserted by Turbine in Counts II and III will therefore be dismissed.  The claims will be dismissed without prejudice, however, in case new information is revealed or there is a change in circumstances relating to Turbine's assignment of its rights to Starr.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Union Insurance Company's motion to dismiss [15] is **GRANTED**.

---

[2] While I recognize that the Missouri Supreme Court's decision in Scottsdale suggests that claims for bad faith failure to settle may be brought jointly in the names of an excess insurer and insured, I do not read the decision as endorsing such a posture when there has been an assignment of the insured's rights to the excess insurer.  This is because the issue of whether such an assignment results in the excess insurer receiving the exclusive right to pursue the primary insurer was not addressed, and such a holding would be in conflict with well-established Missouri law.  See Keisker, 90 S.W.3d at 74 ("By an assignment, the insurer receives legal title to the claim, and the exclusive right to pursue the tortfeasor."); Four Star Equip., 648 S.W.3d at 908 (internal quotation marks omitted) ("Missouri case law is very clear, if a claim has been assigned, there is a complete divestment of all rights from the assignor and the vesting of those rights in the assignee.").

6

**IT IS FURTHER ORDERED** that the claims of Plaintiff Turbine Master, Inc. are **DISMISSED** without prejudice.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of December 2022.